No. 2739.

HENRY STEWART v. THE STATE.

1. PRACTICE—BILLS OF EXCEPTION, unless filed during the 'term or within ten days after the expiration of the term of the lower court, will not be considered by this court on appeal.

2. THEFT—FACT CASE.—See the statement of the case for evidence *held* insufficient to identify the animal traced to the possession of the accused as the alleged stolen animal described in the indictment, and, therefore, insufficient to support the conviction for theft.

APPEAL from the District Court of Hopkins. Tried below before B. W. Foster, Esq., Special Judge.

This conviction was for the theft of a cow, alleged in the indictment to be the property of Mrs. Mary Stewig, in Hopkins county, Texas, on the first day of September, 1886. The penalty assessed against the appellant was a term of two years in the penitentiary.

Mrs. Mary Stewig was the first witness for the State. She testified, in substance, that she was well acquainted with the defendant, and knew him in 1886. During the said year the witness owned a certain red cow that had some white about the back, and the brush of whose tail was white. That animal was marked with a smooth crop off the left ear. She ranged up and down on both sides of Turkey creek, about two miles from the witness's house. Witness did not know, but thought that range was in Hopkins county. She did not know the location of the Hopkins and Hunt county line, nor that Turkey creek formed that line. Witness lived about a mile from Turkey creek. The said cow habitually came home at night until about three weeks before Christmas, 1886, when she disappeared from the range. Witness recovered her cow in March or April, 1887, through the depot agent at Lone Oak. Mr. Cardle went to Lone Oak for witness and brought the cow to witness's house.

On her cross examination the witness stated that she did not know whether the range of the cow was in Hopkins or in Hunt county. She did not know where the county line ran. The defendant was prosecuted in the district court of Hunt county for

the theft of this same cow, and the witness testified against him on that trial. He was acquitted on that trial. The witness had known the defendant a long time. He had always sustained a good reputation for honesty and fair dealing, and the witness did not believe that he stole her cow.

Tom Cardle testified, for the State, that he and the daughters of Mrs. Stewig went to Hunt county to get the cow alleged in the indictment to have been stolen. They found the cow in a pasture near Lone Oak, in the possession of one Greeney, who was the railroad agent at the Lone Oak depot. Witness applied to Mr. Campbell for the cow, and Campbell told him to go to the pasture and get her. Witness knew the cow he got to belong to Mrs. Mary Stewig, and he knew that the range of that cow was in Hopkins county. On his cross examination, the witness said that he did not positively know the location of the Hopkins and Hunt county line, but thought it was about two miles from Turkey creek. Mrs. Stewig lived about a mile and a half from Turkey creek. The defendant, at the time Mrs. Stewig's cow disappeared from the range, was working at a mill in the neighborhood. One Bill Roberts left the county about the time Mrs. Stewig's cow disappeared. Defendant, who. had always sustained a good character for honesty, remained in the neighborhood. When witness applied to Campbell for the cow, he, Campbell, said nothing about defendant, but cursed Bill Roberts as the "d—d thief who stole the cow and sold it to him." Witness told Campbell that Greeney would not surrender the cow unless he, Campbell, paid the money due him. Campbell then told witness to tell Greeney that it was all right, and that he would pay the money. The cow recovered by the witness was marked with a smooth crop off the left ear, and belonged to Mrs. Stewig. Witness did not believe that defendant took the cow, or that he was in any way connected with the theft.

Will Campbell testified, for the State, that during the fall of 1886 he bought a cow from one Bill Roberts. That cow was turned over to Bill Roberts, in the Turkey creek bottom, by the defendant. Defendant did nothing more than ride up near the cow and say to Roberts: "That is the cow I let you have." Roberts helped the witness drive the cow to the pasture. The cow turned over to Roberts by the defendant, and that was sold to witness by Roberts, and which he and Roberts drove to pasture, was marked with a split on the under part of one ear. Neither

of the ears was smooth cropped. Of that fact the witness was absolutely positive. She had no white on her tail.

On cross examination, the witness said that he could fix the time of the purchase of the cow from Roberts no more definitely than that it was in the fall of 1886. Witness bought the cow from Bill Roberts, and not from defendant, paying Roberts for it a certain watch which Roberts had long wanted to buy. Witness met Roberts in the town of Lone Oak on the morning of the purchase. Roberts then offered to give witness a cow for the watch, and witness agreed to the exchange. They then procured horses, got with the defendant and went to Turkey creek bottom. From a point on the road, in the bottom, defendant pointed to the animal described by witness, and said to Roberts: "Yonder is the cow." Roberts and witness then took the cow to the pasture and turned her in. Witness denied that he told Cardle, when the latter came after the cow, that he would pay Greeney for the cow, and he had never paid him. Roberts remained in the Lone Oak neighborhood for several days after the cow was taken away, and then he left. He said nothing about giving the watch back to the witness, nor did the witness try to get it back. Roberts was finally arrested, and was now in the penitentiary.

Simon Lassiter testified, for the State, that during the fall of 1886 the defendant, at his, witness's, house, told him that the cow he sold Roberts was all right, and afterwards told him the same thing in the town of Lone Oak.

On his cross examination, the witness said that he had no particular ill will towards the defendant. He and defendant quarreled once, but became reconciled afterwards. Witness was married to the sister of Bill Roberts. Witness heard about the arrest of Roberts for the theft of this cow. He could not now say when the said Roberts was last at his house before his said arrest. Roberts and witness, at the time the latter was charged with the theft of this cow, were not on good terms, and had not spoken to each other for some time. They afterwards became reconciled, and were now on good terms.

Jim Howerton testified, for the State, that the reputation of the witness Campbell for truth, veracity and honesty was good.

The motion for new trial raised the questions discussed in the opinion.

*Peteet & Crosby*, for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. None of the bills of exceptions contained in the record can be considered, for the reason that they were not filed within ten days after the conclusion of the trial. (Shubert v. The State, 20 Texas Ct. App., 320.)

Mrs. Mary Stewig, the owner of the alleged stolen cow, describes the animal as a red cow, with some little white on her, marked with a smooth crop off her left ear. She states that the cow had some white across her back, and that the bush of her tail was white. Witness missed the cow from her range in December, 1886, and recovered her in March or April, 1887. Mr. Tom Cardle went after and brought back the cow to the witness. Tom Cardle testified that he recovered the cow described by Mrs. Stewig in Hunt county, from the pasture and possession of one Greeney. He describes the cow as being marked with a smooth crop off the left ear, and testified positively that it was Mrs. Stewig's cow, he being well acquainted with said cow.

It is not shown by the evidence that the defendant had any connection whatever with the theft of this particular cow. The only evidence in the record which connects the defendant with *any* cow relates to a different animal—to a cow which he traded to one Bill Roberts, and which Roberts traded to one Campbell. This last mentioned cow had no crop off either ear, but was marked with a split in the under part of one ear, and she had a red tail. As presented to us, the evidence entirely fails to identify the cow traded by the defendant to Roberts as Mrs. Stewig's cow, but on the contrary, shows that they were two different animals.

Because the conviction is not sustained by the evidence, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*